Lee, J.
The proceeding complained of in these causes was one taken under the second section of the act of January 14, 1829, authorizing in certain cases, the sale of small inheritances. Supp. Rev. Code 208. It provided for a sale by order of the court, where any one of the heirs of an estate descended should be an infant, feme covert, non compos mentis or beyond sea, and the dividend of each heir, in the opinion of the court, should not exceed the value of three hundred dollars; the proceeds of sale to be distributed among those entitled. This provision was first enacted in 1790, and constituted the first section of an act amendatory of *598 the law of descents. 13 Hen. Stat. 122. By this act the sale was authorized where the dividend of each heir did not exceed thirty pounds. It was re-enacted in 1792, (the sum named being one hundred dollars,) and constituted the twentieth section of the act of descents then passed. 1 Rev. Code 1814, p. 237. At the revisa! of 1819, it was again enacted in nearly the same terms; but the power to sell was extended to all cases in which the dividend of each heir should not exceed three hundred dollars; and it constitutes the twentieth section of the act of descents. 1 Rev. Code 1819, p. 358. By the act of February 27, 1828, the section was repealed; but in the following year it was re-enacted in the same terms. Supp. Rev. Code, p. 208, 224.
The construction of the clause defining the cases in which the power to direct the sale is to be exercised, is now presented for consideration for the first time in this court; and the question arising in this case is, Whether by the “ dividend of each heir,” which is not to exceed the value of three hundred dollars in the case in which a sale is authorized, is meant the share of each heir in the estimated value of the property taken as a whole, or the estimated value of each share of the estate, if the same were to be equally divided among the heir’s of the decedent.
It appears that the commissioners to whom the subject was referred by the court, reported that the property of which Burton the intestate died seized, (excluding the part assigned to the widow for her dower,) was in their opinion taken as a whole and undivided, worth thirteen hundred dollars; a sum which, divided among the four heirs, would give to each more than three hundred dollars. But they stated in addition, that while the property was susceptible of being divided into four equal parts, yet by such a partition the interest of all parties would be injuriously afiected, *599 because in their opinion each share, if so divided, would not be worth more than two hundred and fifty dollars.
In many cases of estates descended, the estimated value of the shares of all the heirs, supposing an equal partition to be made, is greater than that of the whole property divided. In others, there is little or no sensible disparity in the estimated values of the property, divided and undivided. This.case falls within a third class, in which the value of the estate is so lessened by partition, (according to the estimate made,) that each heir would get a portion of property worth less than three hundred dollars, while if a sale of the whole be made, he will get upwards of that sum in money.
. It is possible that the policy which the framers of this section had in view may have been, in part, to avoid the evils which have been elsewhere, and especially in France, so sensibly felt, of minute subdivisions of lands by repeated and successive partitions of small inheritances among the heirs of those dying possessed of the same. But it cannot be doubted, I think, that the chief object was to promote the interest of the heirs ; it being assumed that where an estate descended was of so inconsiderable value as those contemplated by the provision, it would be more to their interest to sell it and divide the money than to make partition. Now where the estimated value of all the shares, if the property be divided, would be equal to what it would bring if sold under the order of the court, no question could arise if each share were less than the prescribed sum. But where the estimated value of each share, if partition be made, would be greater than the amount which each heir would receive if the property were sold, if the former exceeded three hundred dollars, though the latter might be less than that sum, I think it would be clearly not a case in *600 which the court would be authorized to direct a sale; because the main object of the law, to wit, to promote the interest of the parties entitled, would be thereby defeated. On the other hand, where the share of each heir, if partition were made, would be of less value than three hundred dollars, I think the court might properly direct a sale, notwithstanding it might be of opinion it would bring a sum which would yield more than three hundred dollars to each party entitled to distribution. Nor would the validity of the sale be in any manner affected if it should turn out that the land actually did bring such a sum. It was clearly not the intention of the act that the land should be sold for less than the greatest sum it would bring; and although this might be sufficient to yield more than three hundred dollars to each heir, that amount would not be the test of the court’s jurisdiction ; the time criterion being the opinion of the court before the sale is ordered as to the probable value of each share of the land, if the same were divided in kind, when sold separately. And although it might be made to appear in some subsequent proceeding that the court was mistaken in its opinion, and that each share, if sold separately, would have been worth more than three hundred dollars, yet, assuming that no fraud is justly imputable to any party, and that that opinion was fairly formed upon reasonable grounds, and with such lights as were before the court, I cannot think that a fair purchaser should be afterwards disturbed.
The cases to which I have thus referred as constituting the third class, are, I think, peculiarly fit for the exercise of the power conferred by the statute, and present a state of facts to which the law was exactly intended to apply. Not only the supposed general advantage of converting an inconsiderable real property into money is secured to the parties, but the particular *601 advantage of an enhancement of the value of their estate. And that their interest is mainly to be consulted, as has been already intimated, I can perceive no reasonable ground to doubt. If it were made to appear, in any given case, that it would be plainly to the interest of the hems that the property should be retained, surely the act is not so imperative in its terms that the court would feel itself required to direct a sale.
The case put by the counsel, in illustration of what he regards as the fallacy of the construction he. is resisting, is not, I think, at all apposite to the present case. He puts the case of a manufacturing mill worth thousands, if sold entire, but which, if divided in kind among several parties, would be rendered valueless. Such a property is not susceptible of a division in kind, in any just or beneficial sense, and a different mode of mailing partition must be adopted. Whether in the case put a sale could be resorted to, I undertake to express no opinion. In the case we have it abundantly appears that a division of the property in kind might have been made, though such a division would have been attended with a sensible diminution of its value.
The interpretation of this statute thus indicated is, I think, the soundest and most rational, and so far from doing violence to its terms, will be found to be in perfect accordance with them. The term “ dividend” is perhaps more frequently used to signify by an extension of its primary meaning, a share in money of a common fund, but it may with perfect correctness be applied to land or any other subject held by several in joint ownership. And if it were intended to use it in this act in the sense of a share in a moneyed subject,, (the estimated amount of the proceeds of sale,) the expression would perhaps have been “and the dividend of each heir shall not exceed three hundred dollars,” *602 or “the sum of three hundred dollars,” or some similar phrase; whereas it is “ and the dividend of each heir shall not exceed the value of three hundred dollars :” thus importing a share in kind or thing of a certain value, rather than a sum óf money which is itself the very measure and expression of value.
But it is said, the portion assigned to the widow for dower was excluded from the estimate of value made by the court; and that it is now shown there was another lot belonging to the estate, which was not brought to the notice of the court, and its value therefore not estimated; and that before the court could direct a sale, it was bound to estimate the value of the whole estate descended.
Whether the act only authorizes a sale where the share of each heir in the whole estate descended does not exceed the prescribed sum, or whether a parcel such as a particular tract separated from the residue of the lands, may be sold under its provisions, is a question which may not be altogether unworthy of consideration. Oases may arise in which it might be highly beneficial to the heirs that a detached parcel of property might be sold and the residue equally divided. But without intimating any opinion on this point, and although the part assigned to the widow for her dower is of course part of the estate descended, it is to be observed that the interest of the heirs in it is but a dry reversion the sale of which could scarcely be contemplated under the provisions of this act. What was intended to be sold, was the subject of which the heirs were entitled to the immediate possession and enjoyment for present comfort and subsistence as soon as partition should be made. Now, whether the case of McClintic v. Manns, 4 Munf. 328, is to be understood as affirming the legal right to demand partition of dower lands among the heirs during the life of the tenant in dower or not, certainly *603 it has not been the usage in Virginia to make partition of such lands until after the death of the doweress. And it would be extremely difficult if not impossible for the court to form any correct estimate of the value of the reversion in sueh a case. Besides, the sale of a reversion would generally be at a serious loss, and frequently a great sacrifice, thus defeating what, as already intimated, I take to be the great object of the law. I think the widow’s dower land is, according to general usage throughout the state, properly regarded as not a fit subject of partition, either in kind or by a sale, and that the other lands may be sold by order of the court, without taking the former into the estimate, leaving it to be the subject of future disposition, when it falls in upon the death of the tenant for life.
The omission to include in the estimate the lot near Charlottesville does not appear on the face of the proceeding in the county court prior to the sale, but is set up in the petition to open the order of sale, filed by the appellants, and in their answers tendered therewith, and in their cross bill and supplemental. It is new matter of defence nbw set up after the sale has been made and confirmed, by virtue of which it is sought to annul the whole proceeding and reclaim the property.
There would seem to be some want of precision in the authorities as to the extent to which an infant is entitled to avail himself of the right to appear and make defence after he attains full age, even in those cases in which it is absolutely required that time should be reserved to him for that purpose. In 1 Daniel’s Chy. Pract. 205, it is laid down in general terms, that an infant defendant is as much bound by a decree in equity as a person of full age. Therefore, says the author, if there be an absolute decree made against a defendant who is under age, he will not be *604 permitted to dispute it unless upon the same grounds uPon which an adult might have disputed it, such as collusion or error. And in the case of a decree foreclosure, although a day must be given the infant to show cause against it, he can only do so by showing error. He may not unravel the account, nor is he even entitled to redeem by paying the amount due. Mallack v. Galton, 3 P. Wms. 352; Bishop of Winchester v. Beavor, 3 Ves. R. 314; Williamson v. Gordon, 19 Ves. R. 114. In other cases, it would seem he may obtain leave to amend the answer filed for him, or to put in a new one, showing grounds of defence not before the court, or not insisted on at the former hearing. Bennett v. Lee, 2 Atk. R. 531; Napier v. Lord Effingham, 2 P. Wms. 401; Fountain v. Carine, 1 P. Wms. 504; Stephenson v. Stephenson, 6 Page’s R. 353; James v. James, 4 Page’s R. 115.
But if this matter were now available to set aside the decree, the appellants have failed to make out the case which they allege. There is no sufficient evidence that there was such a lot belonging to the estate as that charged to have been improperly omitted from the estimate. No written evidence of title is exhibited, nor any contract of purchase proven. They prove the execution of an order to Marchant by Bishop as administrator of Burton to make a deed to Hawkins for a lot he had previously conveyed to Marchant. Whether the lot had in fact been purchased by Burton, and if purchased, whether paid for or not, or whether the claim of Burton was in the nature of a lien for a debt which had been paid, or what was the nature of his claim, is nowhere explained. The commissioners, in their report, seem to regard the property valued by them as the whole of the estate. And certainly this order is insufficient of itself to prove that Burton died seized of an estate of inheritance in this lot, which, upon his death, passed to his heirs. Nor *605 is there any evidence as to the value of this lot, or to show that the value of each heir’s share, added to the estimated value of the share in the other property, would make the value of each share in the whole estate greater than three hundred dollars. The appellants allege,- it is true, that this lot was worth about two hundred and twenty-five dollars, and that Bishop had sold it to Hawkins at about two hundred dollars. Of this, however, there is no proof: and even if the sum for which it is said Bishop sold it to Hawkins be assumed as the value at the time of the order for the sale, one-fourth of that sum added to the estimated value of each share in the other property, if divided, would not make it exceed the prescribed amount. If the price at which the appellant Burton states in his answer his father had purchased the lot of Marchant shortly before his death, be assumed as the fair value, the shares of each heir in the whole estate would still be less than the three hundred dollars. And moreover, if all this were otherwise, yet here the interest of a fair purchaser under the decree is involved, and a grave question arises as to how far his rights are to be'affected by any error or irregularity in the proceedings. There are strong authorities to show that a purchaser under a decree will not be affected by such errors or irregularities; and that he is not bound to go through all the proceedings and look into all the circumstances, and see that the decree is right in all its parts, and that it cannot be altered in any respect. He cannot of course be protected against a title not in issue in the cause, nor against the claims of persons not parties to the cause, and therefore not bound by the decree; but it should seem that he has the right to presume the court has taken the necessary steps to investigate the rights of the parties, and upon such investigation has properly decreed the sale. Bennet v. Hamil, 2 Sch. & Lef. 566; Lutwych v. Winford, *606 2 Bro. C. C. 248; Lloyd v. Johnes, 9 Ves. R. 36, 65; Curtis v. Price, 12 Ves. R. 89, 101. See also Booth v. Rich, 1 Vern. R. 295; Mills v. Dennis, 3 John. Ch. R. 367. I do not deem it material however to the decision of this case further to prosecute this enquiry, or to express any definitive opinion upon the point involved.
I think there is nothing in the objection that a summons had not been served upon the heirs before the order of sale was made. They were all under age; and it can hardly be supposed the legislature intended that process should be served upon infants. There can be no discrimination between minors of different ages, and none is made by the act; and if it be necessary to serve a process upon any, it must be equally so to serve it upon those of the most tender years, and who would of course be utterly unable to comprehend what was intended, or to make any response after they were so summoned. So idle a form it cannot be supposed was intended to be observed, and we must infer that the heirs intended to be summoned were such of them as should be of full age and qualified to make defence. And this derives countenance from the provision of the act of March 3d, 1827, (Supp. Rev. Code 134,) concerning the sale of the lands of infants at the' instance of guardians. This act requires the adult heirs only, in terms, to be summoned.
But if these infant heirs had been summoned they could only have made defence by a guardian ad litem,, and one must have been appointed by the court for that purpose. This has been done, and an answer filed submitting the rights of the infants to the protection of the court. This defence was made for the infants in the only way in which it could be made, and it is now wholly immaterial whether a summons had been previously served upon them or not.
There is yet another view of this case going beyond *607 those which have been already presented, which I think fatal to the pretensions of the appellants.
At common law in actions against infant heirs for debt, at the suit of specialty creditors of their ancestor, either party might pray that the parol might demur : and a similar practice obtained in equity where a suit was brought to enforce the legal liability of the heir to pay specialty debts of the ancestor out of the assets descended, whether the suit were brought by the specialty creditor or by a simple contract creditor to marshal the assets. In such a case no decree for relief would be pronounced during the infancy of the heir. Courts of equity went further and extended this protection to the infant in other cases besides those in which the parol could demur at law; and they adopted a general rule by which in cases of foreclosure and partition, and other cases in which the courts were asked to sell and convey the real estate of an infant, and in which the execution of the conveyance was necessarily to be deferred until the infant attained his age, he was entitled to an opportunity after that period, to show cause against the decree; and a provision was accordingly inserted in the decree reserving the right so to dQ. By the English statute abolishing the rule for the parol demurring, (1 Will, iv, ch. 47,) provision is made empowering the court in certain cases to compel an immediate conveyance from an infant heir; and there are other statutes giving the court jurisdiction to order the immediate conveyance of an infant’s estate. And in such cases, as well as those in which no conveyance, either in form or in substance, is directed, the infant is held bound by the decree, and no day is given him to show cause after he becomes of age. In all other cases it seems to be agreed, the general rule is that time' must be given him after he becomes of age to show cause against the decree. And even in a case of foreclosure as we *608 have seen, time must he given; though in that case, the only cause that can be shown is error in the decree. See Tuckfield v. Buller, Amb. R. 197; Eyre v. Countess of Shaftsbury, 2 P. Wms. 102; Booth v. Rich, 1 Vern. R. 295; Cooke v. Parsons, 2 Vern. R. 429; The Duchess of Buckingham v. Sheffield, Amb. R. 586; Price v. Carver, 3 Myl. & Cr. 167; Mills v. Dennis, 3 John. Ch. R. 367. And such I suppose is the general rule in Virginia where the rule of the parol demurring has been also abolished; for although by the act of December 21, 1818, (1 Rev. Code, p. 204, § 41,) the superior courts of chancery, and by the act of January 1828, (Supp. Rev. Code, p. 178, § 5,) the County courts are authorized to make immediate conveyance of the estate of an infant or any other person, in a proper case, yet by the proviso contained in the first mentioned act it is expressly declared that it was not to be construed to affect the right of an infant or any other person to show cause against the decree within the same time as if it'had never passed. But this rule I apprehend is properly applicable to chancery suits proper, inter partes, in which the heir stands as defendant and relief is sought in invitum in respect of property vested in him by grant, devise or descent, and should not be applied to the peculiar statutory proceeding for the sale of small inheritances which we have under consideration. It must be the intention of this act to make an immediate conveyance of the infant’s estate, and to bind him by the order which it makes for the sale. A different construction would .defeat the objects which the legislature must be supposed to have had in view. It is of course to the interest of the infant that the property should bring the best possible price, and it is to the public interest that the real estate of the citizen should be properly cultivated and improved. But who would he willing to purchase the land of an infant at a fair price, or to *609 improve it after he should purchase it, if at a remote period when the infant attained his age, he could come in, rip up the whole proceeding and reclaim the property ? The effect must he either to put an end to such sales altogether, or to occasion ruinous sacrifices, still further impoverishing the helpless and needy object of the court’s protection.
There is nothing in this act stamping the measure which it provides with the distinctive character of a chancery suit. The form of proceeding by bill and answer may be a very convenient as it has been a very common one, to obtain the order for the sale; but there is nothing to make it necessary to adopt it. It is true it is to courts possessing chancery jurisdiction the power to direct the sale has been confided: But • this may be because it more conforms to those which such courts usually exercise and to their manner of proceeding than to those of the law courts, or because the care and management of infants and their estates seems more appropriate to the former than to the latter. But this act, unlike that concerning sales of infants’ estate at the instance of guardians, does not require that a bill be filed setting forth the facts of the case, on oath, nor that an answer shall be filed on oath by a guardian ad litem, and in certain cases by the infant himself. It does not in terms require any bill or answer to be filed, or any pleadings whatever; The process which it directs to be issued is not the usual subpoena in chaneery to answer a bill, but a special summons to the heir to appear and show cause against the sale. The order of publication against any heir that may be absent, is to be inserted in a newspaper; but it is not required to be posted at the court-house door, as in chancery cases proper. No provision is made as there is in the act just referred to, requiring the testimony to be taken and filed in writing ; and the minute directions contained in that act are all *610 omitted in this. Nor is any day directed to be given the infant after he attains his age to show cause against ■ the decree. I think the proceeding is not to be regarded as a chancery suit proper; and that although the form of filing a bill in which the infant heirs may be named as defendants be adopted, yet they are in fact to be regarded as equally actors' in the matter, under the protecting care of the court; and indeed I perceive no .sufficient reason why the court may not . upon a simple suggestion ore terms, after having caused the proper parties to be summoned, proceed to hear the testimony generally at bar, and if satisfied that the estate is one of the inconsiderable value contemplated by the statute, make the order for the sale in a summary way. In short I regard it as one of those special cases in which by statutory provision, authority and jurisdiction are given to the court for special reasons and purposes, to order the immediate conveyance of an estate vested in an infant, and in which he is bound by the order, and entitled to no day after he attains his age to show cause against it. The court judges for the infant and must be presumed to have exercised its judgment honestly and discreetly; and the infant must be concluded unless he can show fraud, collusion or error. Cases of this character occur in England under the statutes, 1 Will, iv, c. 47, (concerning the parol demurring ;) 2 Geo. iv, and 1 Will, iv, c. 60, (concerning conveyances of trust estates in certain' cases;) 4 and 5 Will. iv. e. 23, (concerning escheats and forfeitures of property holden in trust;) and 2 Viet. c. 69, (concerning transfers of estates vested in the heirs and devisees of mortgagees.) They are the same referred to in 1 Daniel’s Chy. Pract. 208, as cases in which no clause giving the infant a day to appear need be inserted in the decree. In Virginia, besides the act under consideration, similar cases would occur, I presume, under the 13th section of the act of 1819, (1 *611 Rev. Code 408,) providing for the conveyance of estates vested in infants, in trust or by way of mortgage; also under the 14th section of the same act providing for the making or taking on behalf of an infant, the surrender of -a former lease or the making or taking a new one, as the case may require, and perhaps under other provisions of that and other acts.
It is true that by what seems to be the final order made in this cause upon the coming in of a report of the commissioner directed to collect and distribute the proceeds of the sale, time is given the infant defendants after they should attain their age to show cause against the decree. But this will not vary the case. This order was- not made until more than a year after the purchasers had bought the property, and the sale had been confirmed by the court. And if the infants were not entitled under the law to such a reservation, this order cannot have the effect to confer the right to it upon them, nor are the purchasers at the sale to be affected by it.
The decree should perhaps be corrected by declaring it to be without prejudice to the right of the heirs at law of Frances McCoy to require security to be given for the forthcoming of her share of the proceeds of the sale at the death of the said Daniel E. McCoy, if they would otherwise be entitled to demand the same, or to any suit which they may be advised to institute for the recovery of her share in that portion of the estate assigned to the widow for her dower ; and so amended, I think it should be affirmed.
Moncure and Samuels, Js. concurred in the opinion of Lee, J.
Allen, J. dissented.
Decree affirmed.